**LEWIS et al. v. DISTRICT OF COLUMBIA et al.**

No. 10597.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 29, 1951.

Decided May 24, 1951.

Michael J. Keane, Jr., Washington, D. C., with whom Karl Michelet and James W. Lauderdale, Washington, D. C., were on the brief, for appellants.

Chester H. Gray, Principal Asst. Corporation Counsel, D. C., Washington, D. C., with whom Vernon E. West, Corporation Counsel, D. C., Oliver Gasch, Asst. Corporation Counsel, D. C., and John F. Doyle, Asst. Corporation Counsel, D. C., Washington, D. C., were on the brief, for appellees.

Before CLARK, PRETTYMAN and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This suit challenges the action of the Zoning Commission of the District of Columbia in refusing to change the classification of appellants' property from "residential" to "commercial."

The property in question is located at the intersection of Connecticut and Florida Avenues, on the northwest corner.[1] The buildings were erected prior to the enactment of the first Zoning Act,[2] and have always been used for residential purposes (of late years, on an apartment or multifamily basis). During the period from the passage of the Zoning Act to 1946, it appears that the south side of Florida Avenue, Northwest, marked the limit of commercial development on Connecticut Avenue, at least below the Taft Bridge. Appellants' property (along with the property known as "Temple Heights," on the

[1] Described as 1800, 1808 and 1810 Connecticut Avenue, N. W.; 2013 and 2033 Florida Avenue, N. W., and 2101 S Street, N. W., Washington, D. C.

[2] Act of March 1, 1920, 41 Stat. 500. The present statute is found in Title 5, D.C. Code (1940 ed.) § 412 et seq.

northeast corner of Connecticut and Florida Avenues) was thus the southern extremity of the residential area on Connecticut Avenue.

On July 8, 1946, the Zoning Commission rezoned the area on Connecticut Avenue just opposite appellants' premises—a 2½ acre triangle in Temple Heights, north of Florida Avenue—as "First Commercial." Appellants consented to that rezoning, and shortly thereafter filed a petition with the Zoning Commission for similar action with regard to their own property. After an adverse report by the Zoning Advisory Council, a public hearing was held by the Zoning Commission. Later, the Commission inspected appellants' property. Finally, on July 17, 1947, the Commission denied appellants' petition. It adopted the report and recommendation of the Zoning Advisory Council, which concluded that the proposed change was "undesirable and unjustified * * * based on several factors, (1) lack of need; (2) substantial character of existing residential improvements; and (3) the possibility that at least four of the properties are eligible for restricted commercial use under the provisions of Paragraph 22, Part 2, Section XXIII of the Zoning Regulations."

Appellants then sued in the United States District Court for the District of Columbia, seeking a mandatory injunction which would require appellees to change the classification of the property to "First Commercial." After answer was filed, appellants moved for summary judgment. Appellees made a similar motion, which was granted. From this judgment appeal is taken.

### I.

█ In considering the propriety of any zoning order it must be remembered that zoning, by definition, requires that a boundary be drawn at some point, even though practical conditions may not change abruptly as the line is crossed.[3] "Some must suffer by the establishment of any territorial boundaries." L'Hote v. New Orleans, 177 U.S. 587, 597, 20 S.Ct. 788, 792, 44 L.Ed. 899. That is the price to be paid in order that we may have effective zoning. The necessity and desirability of zoning and city planning can no longer be subject to debate. Uncontrolled, haphazard development causes blighted neighborhoods, with their residents deprived of the amenities of decent living and of the environment which breeds good citizenship.[4] Accordingly, Congress has given considerable discretion to the Zoning Commission for the establishment of a comprehensive zoning plan, so that the public welfare may dominate the development of the capital city.

█ In reviewing the exercise of that discretion, "It is not the function of the court to substitute its judgment for that of the Commission even for reasons which appear most persuasive. A suit to declare a zoning order void is not an appeal on the merits of the issues presented to the Commission at its hearing." Wolpe v. Poretsky, 79 U.S.App.D.C. 141, 143–144, 144 F. 2d 505, 507–508. "The action of zoning authorities, as of other administrative officers, is not to be declared unconstitutional unless the court is convinced that it is 'clearly arbitrary and unreasonable, having no substantial relation to the * * * general welfare.' [Citing cases] If the question is 'fairly debatable,' the zoning stands." Leventhal v. District of Columbia, 69 App. D.C. 229, 230, 100 F.2d 94, 95.

### II.

Appellants' primary contention is that when the Zoning Commission on July 8, 1946, extended the commercial classification to include a 2½ acre segment of Temple Heights, it established "a new comprehensive plan for Connecticut Avenue," and that

---

3. "All boundary lines are more or less arbitrary, but if laid out with reasonable fairness, the courts will uphold them." Bassett, Zoning, p. 96 (1940).

4. See Metzenbaum, The Law of Zoning, 126–129 (1930); The President's Conference on Home Building and Home Ownership, Vol. VIII, Housing and the Community—Relation of Housing to Health, Delinquency, Industrial Efficiency, Safety, Citizenship, Recreation (1932); and see cases collected in McDougal and Haber, Property, Wealth, Land, p. 799 et seq. (1948).

it acted arbitrarily in excluding appellants from the benefit of this new plan. They argue that the Commission's action is "invalid by reason of its arbitrary, discriminatory characteristics * * * bearing no real or substantial relation to the public health, safety, morals, or general welfare * * *" (Brief, p. 7). They refer to this court's decision in Wolpe v. Poretsky, 81 U.S.App.D.C. 67, 154 F.2d 330, certiorari denied 329 U.S. 724, 67 S.Ct. 69, 91 L.Ed. 627, and contend that the action of the Commission here amounts to "spot zoning" within the condemnation expressed in that case. Reference is also made to the statement of this court in Leventhal v. District of Columbia, supra, with regard to the injury which may be suffered by an owner of a "residence-zoned island or peninsula in a commercial-zoned sea."

There appears to be no dispute about the governing facts: Appellants are located at a busy intersection, the other corners of which have now been classified for commercial use. The stream of traffic passing appellants' property is exceedingly heavy; the attendant noise and activity may well render it of marginal desirability for residential purposes. At the same time, this condition is not entirely novel. For a generation, commerce has been separated from appellants' property merely by the width of Florida Avenue. The only major change is with regard to Temple Heights.

■■ It is unquestionably true that the partial commercialization of Temple Heights is a factor lending considerable support to appellants' position, as they no doubt realized when they supported that step in 1946. But it is by no means conclusive. There is nothing arbitrary *per se* "in the mere zoning of one side of a street for business uses and the other side thereof for residential uses, where this is part of a comprehensive and reasonable zoning plan." 8 McQuillan, Municipal Corporations, p. 159 (3rd ed. 1950). Appellants do not here argue that the District does not have (in general) a comprehensive and reasonable plan, but rather that they have been improperly excluded from certain of its benefits. That, of course, can only be determined by considering the facts of the particular case. For different treatment of two tracts of property in the same locale is only discriminatory if the properties are similarly situated, and no reasonable grounds exist for differentiation. McQuillan, supra, at 87–88, 155–56.

■■ The materials before us indicate that Temple Heights is situated quite differently from appellants' property. It is a tract not yet developed, which is to be cut through by an extension of T Street. A new thoroughfare and new parking area will thus be created. The reclassified portion of Temple Heights is a vacant triangle of some 2½ acres bounded by busy streets. A residential development on such a site could not logically be expected: commercial use is more in keeping with future trends. Further, it would appear that the location and characteristics of the 2½ acre segment are such that its reclassification will expose neighboring residential areas to a minimum of commercial encroachment, a statement which could hardly be made as to a comparable change respecting appellants' property.[5] And it has long been recognized that one of the purposes of zoning is to "stabilize the uses of land" and "furnish a protection to residential neighborhoods which will cause them to maintain themselves in a decent and sanitary way for a longer time than they otherwise would. * * * By this process obsolescence is greatly retarded."[6] We conclude, therefore, that the differentiation in classifica-

5. The record shows that appellants' petition was actively opposed by a number of owners of residences on Bancroft Place and Leroy Place, located to the west and north of appellants' tract. (Jt.App. 38–40) Some of these property owners alleged that the granting of the appellants' petition would "ruin the residential char-

acter of the neighborhood" and have an adverse effect on the investments of the home owners there. (Jt.App. 40.)

6. The President's Conference on Home Building and Home Ownership, Vol. 1, Planning for Residential Districts, p. 29 (1932); Walker, Urban Blight and Slums, p. 162 et seq. (1938).

tion of which appellants complain is not discriminatory, so as to render the Commission's action arbitrary *per se*.

## III.

We turn to the three grounds upon which the Zoning Commission relied in refusing to rezone appellants' property. All are vigorously attacked by appellants. The first ground, "lack of need," is alleged by them to be merely a sheltering of certain other property owners, i. e., those now possessing commercially-zoned property, against competition on the part of appellants. We see no basis for imputing such a motive to the Commission. Rather we believe that the Commission's action can be more accurately described as tending to cause existing commercial zones to become fully developed before additions to such zones are made. This appears to us to be a reasonable objective.[7] "An unlimited supply of commercial sites invites unnecessary and wasteful expansion of enterprises. * * * The over-supply of store facilities inevitably leads to the blighting of the neighborhood."[8] Further, to provide for the development of concentrated business districts, distinct from residential districts in which the amenities are preserved, would certainly appear to be a more desirable arrangement than to allow mixed commercial-residential areas not offering much in the way of comfortable living. See Planning for Residential Districts, supra, at p. 33. The Commission makes a showing that many properties in the commercial area neighboring appellants' premises are not yet used for business purposes. We believe the Commission did not exceed its authority when it took that factor into consideration.

The Zoning Commission also gave as a reason for its denial of appellants' petition the fact that residential improvements of substantial character are located on appellants' parcels. Appellants contend that this is an irrelevant consideration; that it is not a factor clearly related to health, safety, and welfare. But the Zoning Commissioners are entitled to consider the entire situation in a particular locality. They need not close their eyes to such factors as the adequacy and good condition of existing buildings for the uses to which they are presently being put; the need of the community for those uses, the style and attractiveness of existing buildings, and the like. All of this is certainly relevant to the preservation of the values of surrounding property. If buildings of substantial size and real utility to the community are to be torn down or rebuilt, and it is not clear that buildings of equal or greater attractiveness and community usefulness are to replace them, the Zoning Commissioners can hardly be expected to give consent without carefully weighing these factors. In the present case it would appear that the existing residential structures include at least one substantial apartment house; that they are well occupied; and that they form a useful part of the housing accommodations of the community.

The third ground relied upon by the Zoning Commission was the eligibility of appellants' properties for limited commercial use. It appears that while the classification of appellants' properties is, and has been, "residential," certain of them may (upon proper permit) lawfully be used for, and by, educational or philanthropic institutions, trade associations, and professional persons. (Zoning Regulations, District of Columbia, Paragraph 22, Part 2, Sec. XXIII.) Appellants contend that an order predicated on such a basis amounts to a "piecemeal distribution of zoning privileges," and argue that it should not defeat their contention that the Commission's action was invalid in its entirety. In this regard they cite Hazen v. Hawley, 66 App. D.C. 266, 86 F.2d 217. We do not regard that decision as pertinent here. We consider, on the contrary, that the alternative course of action which is open to appellants is a factor for the Commission's consideration. As a practical matter it may well help to cushion for them the pecuniary loss

---

7. See Hubbard & Hubbard, Our Cities To-day and To-morrow, 186–89 (1929).

8. The Zoning Commission of the District of Columbia, Experiences with Zoning in Washington, D. C., 1920–34 (1935).

**30**

which they may have to suffer in connection with the changing character of their neighborhood. McQuillan, supra, 85–87.

### IV.

We do not consider, after careful study of the record and the briefs, that appellants have established that the Commission's action was arbitrary and unreasonable. We must add, however, that the challenge here is to the validity of the action which the Commission took in 1947. Determinations of that sort should not be regarded as final and not subject to reopening upon a showing of changed conditions. We do not wish to encourage the filing of a flood of vexatious and repetitious petitions to the Commission. But if after a reasonable time has elapsed a new application is made to the Zoning Commission based on a showing of intervening occurrences and changed conditions, we do not think that the Commission would be entitled to regard its previous action, and the action which this court is now taking, as being necessarily conclusive against the appellants.[9]

For these reasons, the judgment of the District Court will be

Affirmed.

---

9. See cases collected in 168 A.L.R. 127 (1947).