Patrick A. O'BOYLE, Roman Catholic Archbishop of Washington, D. C., a corporation sole, Plaintiff,

v.

Theodore I. COE, John Nolan, Jr., Robert O. Clouser, James E. Schwab, Samuel Schrivener, As members of the Board of Zoning Adjustment, District of Columbia, Defendants.

Civ. A. No. 1278-57.

United States District Court District of Columbia.

Oct. 31, 1957.

John L. Hamilton, Washington, D. C., for plaintiff.

Chester H. Gray, Corp. Counsel, George C. Updegraff, and George H. Clark, Asst. Corp. Counsel, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

This action is brought by the Roman Catholic Archbishop of Washington, D. C., a corporation sole, as owner in fee of certain real property adjacent to the Church of the Immaculate Conception, against the Board of Zoning Adjustment of the District of Columbia, to set aside an order that denied an application for permission to establish a gasoline serv-

ice station on the property in question. The relief prayed for is a mandatory injunction requiring the Board to vacate its order and to grant an exception to the Zoning Regulations as provided by law, in order to permit the property to be used for the desired purpose. The case is now before the Court on cross motions for a summary judgment.

Under the zoning scheme of the District of Columbia, there is a Zoning Commission clothed with authority to establish districts or zones and to regulate the construction and use of buildings, and structures and uses of land within each area, D.C.Code, § 5–413. In addition, there is a Board of Zoning Adjustment, one of whose functions is to pass upon requests for special exceptions to zoning regulations, D.C.Code, § 5–420. The property involved in this action is located in a district zoned as a "first commercial district", in which the operation of stores and similar business establishments is permitted. The Zoning Regulations of the District of Columbia, adopted by the Zoning Commission, authorize the Board of Zoning Adjustment to allow a gasoline and oil service station in a first commercial district provided that the Board makes certain specified findings of fact.

The pertinent regulation (Section XXIII, Part 2) reads as follows:

"Upon appeals [1] the Board of Zoning Adjustment is hereby empowered to grant requests for the following special exceptions, when, in the judgment of the Board, such exceptions shall be in harmony with the general purpose and intent of the zoning regulations and maps and will not tend to affect adversely the use of neighboring property in accordance with the zoning regulations and maps:

\* \* \* \* \* \*

"10. Permit in a first commercial district gasoline or oil service station, \* \* \* provided that no por-

tion of any street frontage of the building or premises so to be used shall be opposite a residential district, measured at right angles to the intervening street or streets, and no portion of the building or premises so to be used would be located within 25 feet of a residential district, unless separated therefrom by a public alley, and provided that the Board shall find (a) that no dangerous or otherwise objectionable traffic conditions may result, (b) that any noise or odor will not affect the neighborhood adversely, (c) that the city plan or the present character or future development of the neighborhood will not be affected adversely, and (d) that such a location is not in such proximity to a school, church, or hospital, as to affect adversely the public convenience, interest or safety. Before making such findings the Board shall submit the application to the National Capital Planning Commission and the Director of Traffic for report."

An application for an exception to the regulations in order to permit the establishment and operation of a gasoline service station on the property in question, was made by Monsignor Roeder, the pastor of the Church of the Immaculate Conception. After a hearing at which evidence was introduced, the application was denied by the Board, by a vote of four to one. On an application for a rehearing, the Board after argument adhered to its original decision, but this time by a vote of three to two.

The question whether an application for an exception should be granted is committed to the sound discretion of the Board of Zoning Adjustment. The Court may not substitute its own judgment for that of the Board. It may not adjudicate the matter *de novo*. In this respect the rule is the same as that which governs issues to be decided

---

[1]. The term "appeals" is manifestly inaccurately employed, since an "appeal" in a legal sense is a proceeding to review a decision of another agency or tribunal.

It is obvious that what is meant is "applications" or "petitions". It may be well to amend the regulation accordingly.

by the Zoning Commission. Selden v. Capitol Hill Southeast Citizens Association, 95 U.S.App.D.C. 62, 219 F.2d 33; American University v. Prentiss, D.C., 113 F.Supp. 389, affirmed 94 U.S.App. D.C. 204, 214 F.2d 282. The administrative discretion, however, is not unlimited or unbridled. It must be a sound legal discretion. Whether a dispensation should be granted is not a matter of grace, but must be determined on legal principles. In a democratic society, the acts of government officials are not based on grace but on established principles of law. In fact the regulation here involved expressly formulated certain standards to guide the actions of the Board. The Court may set aside an action of the Board if it finds that the decision was arbitrary or capricious. It is hardly necessary to mention that the words, "arbitrary and capricious" in this connection are not used in their popular sense and have no opprobrious connotation. In their technical legal significance an administrative action not supported by evidence, or lacking a rational basis, is deemed arbitrary and capricious.[2] Decisions of administrative agencies and officials may not be predicated on personal desires or views, no matter how sincere they may be. This preliminary summary of the governing principles of law leads to a consideration of the record. The Church of the Immaculate Conception is located on the southeast corner of 8th and N Streets in Washington, D. C. Adjoining it on N Street to the east is a boys' school, conducted by the church. Adjacent to the church on 8th Street to the north, is a house used by members of the clergy. Next to that building on the north there is a vacant plot that runs through all the way from 8th to 7th Street. That part of the empty space that faces 8th Street is used for parking automobiles. The church desires to lease the part of the vacant area that faces 7th Street to the American Oil Company for operation as a gasoline station. This lot forms the subject matter of this action. On the southwest corner of 7th and N Streets, is situated a branch of one of the local banks. North of the bank on 7th Street there is a row of store fronts, broken, however, by the empty lot just mentioned, which used to be occupied by a store, that burned down several years ago and has not been rebuilt.

The undisputed evidence is that the church desired to acquire the vacant space on the 8th Street side for use as a parking lot, but was unable to do so unless it purchased the entire empty strip from 7th to 8th Street. Moreover, it was further motivated in buying the part of the space that adjoined 7th Street, by a desire to prevent its being utilized as a junk yard, or for some other undesirable purpose and thereby further defacing the neighborhood, which had been deteriorating for a number of years.

At the hearing there was presented a written consent to the granting of the application signed by numerous property owners in the immediate vicinity of the square in which the land is located. There was also submitted a favorable recommendation from the Northern Seventh Street Businessmen's Association, Inc. Monsignor Roeder, the pastor of the Church, who had signed the application, testified orally and explained how and why the church acquired the property and why it desired to rent it for a gasoline station, as has been explained above. He also indicated that there was no objection as concerned the school that was being maintained by the church on N Street.

A letter from the Director of Vehicles and Traffic was introduced to the effect that he had no objection to the application. This circumstance is of vital significance on the question whether the proposed gasoline station would create

2. E.g. in Montgomery County v. Merlands Club, 202 Md. 279, 293, 96 A.2d 261, 267, the Court stated:
"We find here that the action of the Board, based on an incorrect legal premise and unsupported by substantial evidence, if any, was arbitrary and capricious in a legal sense, and so, invalid."

a traffic hazard or congestion. The branch manager of the National Bank of Washington, located on the corner of 7th and N Streets, testified in favor of the application, stating that he also spoke for the President of the Bank. He expressed the view that the proposal would help the neighborhood by keeping the block lighted. He also stated that there was a number of vacant stores in the neighborhood and that they had been vacant for at least two years, thus indicating that any idea of using the empty space for building more stores would be unrealistic and futile. A local storekeeper testified that there had been a general deterioration of the neighborhood for some years, that a number of stores were vacant, and that the establishment of a gasoline station would be beneficial. He also stated that it was not feasible to build additional stores in the neighborhood. Another storekeeper testified that he welcomed the idea of a modern gasoline station because it would help light up the vicinity, which had been dark since the fire that had destroyed the store previously situated on the property in question. The President of the Northern Seventh Street Businessmen's Association likewise gave favorable testimony. The Chairman of the Redevelopment Land Agency and Vice Chairman of the National Capital Planning Commission testified that he personally looked over the area and that he favored the granting of the application. It was his opinion that the proposal constituted a desirable step for local business and that nobody in the vicinity would be disturbed or hurt by it. He also indicated that so far as the Redevelopment Land Agency was concerned, the Church and the branch Bank would not be disturbed if and when that general area was redeveloped.

 No testimony whatever was introduced in opposition to the application. No property owner, no resident, no business man of the area interposed any objection. The only discordant note was a letter from the National Capital Planning Commission, signed by its Chairman, recommending that the application

be denied. The common-law rules of evidence do not apply to administrative proceedings and, therefore, the fact that the letter was apparently based on hearsay and that neither its writer nor the member of the staff who made the investigation for the Commission, was present for cross-examination, does not affect its admissibility, as would be the case at a trial before a judicial tribunal. Nevertheless, this circumstance must be considered in appraising the probative value of the communication. True, the statute requires the Board to obtain the recommendation of this Commission, but it does not make it mandatory that the recommendation be followed. Moreover, the fact that the Vice Chairman of the Commission personally appeared at the hearing before the Board, and testified in favor of the application, greatly detracts from the weight of the letter. Obviously, the recommendation of the Commission was lacking in unanimity.

The letter signed by the Chairman of the National Capital Planning Commission is purely general in its nature and gives as the reason for the adverse conclusions that "the intrusion of a gasoline service station in the very middle of this established pedestrian shopping frontage would be inadvisable and adverse to the public convenience, interest and safety. A gasoline station as proposed would interrupt the continuity of retail uses and result in a less compact and convenient shopping facility." This statement seems to overlook the fact that the store previously located on the property had burned down and has not been rebuilt, and that a number of stores in the neighborhood have been vacant for some time, due presumably to the deterioration of the general area.

The opinion of the Board denying the application incorporates the statement just quoted from the letter of the Chairman of the National Capital Planning Commission. The opinion further suggests that the most appropriate use of the property would be the parking of automobiles. The two statements seem to constitute a *non sequitur*. They are con-

tradictory. A parking lot in the middle of the block would be as much of an interruption to the continuity of retail uses and would result in a less compact and convenient shopping facility, equally as much as would a gasoline station. The uncontradicted testimony is that there are sufficient parking facilities in the neighborhood and that more would probably not be absorbed by the public.

During the pendency of this action, the plaintiff filed interrogatories against the defendants with a view to demonstrating that the Board had granted other applications for permission to maintain gasoline stations at other locations in the same neighborhood. This information was apparently intended as a basis for an argument that the action of the Board in this instance was discriminatory and illogical. This evidence might have been weighty and important if it had been introduced before the Board, but may not be presented to the Court in the first instance. The judicial review must be had solely on the record before the Board. In this respect an action to review a decision of the Board of Zoning Adjustment differs from an action to review an order of the Zoning Commission. A suit of the latter type involves the question whether property has been taken without due process of law. Evidence dehors the record before the administrative agency is always admissible on such a Constitutional question, American University v. Prentiss, D.C., 113 F.Supp. 389, 394, affirmed 94 U.S.App.D.C. 204, 214 F.2d 282. No such issue is ordinarily presented in a suit to review a decision of the Board of Zoning Adjustment.

The conclusion is inescapable from the foregoing discussion that the decision of the Board is not sustained by substantial evidence. On the contrary, the overwhelming weight of evidence is to the contrary. Moreover, the reasoning of the Board seems self-contradictory. Its conclusion does not rest on a rational basis. Accordingly the decision of the Board must be deemed ar-

bitrary and capricious in a legal sense, and should be set aside.

The plaintiff's motion for summary judgment is granted.

The defendants' motion for summary judgment is denied.