Raymond **RUPPERT** et al., Plaintiffs,

v.

Walter E. **WASHINGTON** et al.,
Defendants.

**AMERICAN CENTURY MORTGAGE
INVESTORS, Plaintiff,**

v.

Walter E. **WASHINGTON** et al.,
Defendants.

Civ. A. Nos. 227–73, 466–73.

United States District Court,
District of Columbia.

July 9, 1973.

See also, D.C., 366 F.Supp. 683.

---

Norman M. Glasgow, Whayne S. Quin, John F. McCabe, Jr., Washington, D. C., for plaintiffs.

John S. Salyer, Asst. Corp. Counsel, Nathan Dodell, Asst. U. S. Atty., Stephen Weissman, District of Columbia Redevelopment Land Agency, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

The complaints in these companion cases challenge the legality of a Zoning Commission action resulting in the downzoning of a substantial area of the downtown area. Defendants have moved to dismiss or in the alternative for summary judgment. One plaintiff, American Century, has cross-moved for summary judgment and plaintiffs in both cases seek a preliminary injunction. The matter has been fully heard and briefed, with each case incorporating the arguments and documents of the other.

The challenged action of the Zoning Commission on December 8, 1972, (Order 58) downzoned the Mount Vernon area of the city to prohibit many types of office and business structures and was designed to make the area primarily an area of residences and small shops. A very large percentage, perhaps fifty percent, of the existing structures became non-conforming in their use, and plans of some property owners, including plaintiff American Century Mortgage Investors, to build an office structure were aborted. The Redevelopment Land Agency (RLA), a defendant, owns some property in the area and there is considerable land lying either vacant or occupied by condemned buildings. The new zoning requirements were supported by the National Capitol Planning Commission (NCPC), a defendant, RLA, and others.

At a hearing before the Commission many property owners in the area violently opposed the new zoning, although the Mount Vernon area was designated as high-density residential as early as 1969 in a general land use plan for downtown renewal approved by NCPC and adopted by the D.C. City Council.

Plaintiffs make a broadside attack on the Zoning Commission action. Procedural irregularities are claimed, including the absence of an impact statement as provided by the National Environmental Policy Act (NEPA) and the Commission's alleged impropriety in considering various *ex parte* presentations. Further, it is claimed that the action of the Commission was based on a desire to assist RLA to effectuate its urban renewal plan, and possibly to avoid higher costs of condemnation by RLA, and not upon proof establishing that the zoning action bears a reasonable relationship to public health and the general welfare (5 D.C.Code § 414).

When this matter was first before the Court on the unsuccessful application of Ruppert for a temporary restraining order and preliminary injunction, the Court required the Commission to file a statement of the reasons supporting its action, including an indication of environmental factors taken into consideration. This has been done. This material supplements the record of proceedings before the Commission and will be considered in disposing of the issues ten-

dered by the motions now before the Court.

■ At the outset, a brief discussion of the nature of the Zoning Commission's action and the standards to be applied on review is appropriate. It is not disputed that the Commission's action could only have occurred following notice and public hearing. Notice and hearing were given in this instance. It would appear, however, that the proceedings are quasi-legislative in character, not adjudicative in nature. Citizens Ass'n of Georgetown, Inc. v. Washington, 291 A.2d 699 (D.C.Ct.App.1972); Citizens Ass'n of Georgetown, Inc. v. Zoning Comm'n, 477 F.2d 402 (D.C.Cir., Feb. 6, 1973); see Jones v. District of Columbia, 116 U.S.App.D.C. 301, 323 F. 2d 306 (1963). Compare Capitol Hill Restoration Society v. Zoning Comm'n, 287 A.2d 101 (D.C.Ct.App.1972). Thus all the strictures of the District of Columbia Administrative Procedure Act, D.C.Code § 1–1501 et seq., and the full range of due process protections necessary to an adversary adjudication are not applicable.

■ It is also well established by the cited cases that in reviewing the action of the Zoning Commission, the Court is not required to hold a trial de novo nor may it substitute its view of the evidence before the Commission for that of the Commission. These conclusions alone, however, do not, as defendants suggest, automatically require dismissal. Three issues remain to be resolved:

(1) Was a NEPA impact statement required?

(2) Was the hearing constitutionally defective?

(3) Did the Commission receive ex parte statements and thus act beyond its authority?

1. NEPA

■ While this matter is properly in this Federal Court because federal agencies (RLA and NCPC) are named defendants and constitutional claims are advanced, the action of the Zoning Commission is essentially local, not federal. The National Environmental Policy Act at 42 U.S.C. § 4332(2)(C) provides that agencies of the Federal Government shall include a detailed environmental impact statement only "on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." City of Boston v. Volpe, 464 F.2d 254 (1st Cir. 1972). The Zoning Commission has a wholly independent status and function and ·it is not a federal agency. Allen v. Zoning Comm'n, 146 U.S.App.D.C. 24, 27, 449 F.2d 1100, 1103 (1971). The internal rules of NCPC, moreover, have no bearing on the issue and in any event do not require a statement by the defendants in a case like this. Accordingly, it is clear that no NEPA impact statement was required.

2. *Alleged constitutional defects in the hearing and record.*

Plaintiffs contend that the proof before the Zoning Commission was very general, conclusory, and unsupported by factual analysis. Witnesses with no particular expertise are said to have mouthed indefensible conclusions and it is strongly urged that the Commission merely acted in "kneejerk fashion" to accommodate the predetermined demands of NCPC and RLA. Under such circumstances, the plaintiffs note the adverse effect of downzoning on property values and say that the Court must independently examine the proof, take evidence as to the competency of the witnesses, and the motives of the Commission's members, and determine whether due process has been denied their cause. This position purports to be consistent with a decision by Judge Holtzoff in American University v. Prentiss, 113 F. Supp. 389 (D.D.C.1953), aff'd per curiam, 94 U.S.App.D.C. 204, 214 F.2d 282 (1954). It is on this authority that plaintiffs stated at oral argument:

Only this Court can determine whether or not a downzoning is an unconstitutional taking of property and this can be done only after a due process

hearing to test the probative value of the evidence.

Apart from the fact that numerous authorities have long since established that downzoning is not a taking requiring just compensation determination or other protections implicit in an adversary proceeding, plaintiffs have misread *Prentiss*.

Judge Holtzoff's careful opinion in *Prentiss* considered a situation quite unlike that presented here. Ample grounds existed on the Commission's record before him for concluding that the Zoning Commission's action was arbitrary and capricious and hence that the downzoning change resulted in an unconstitutional taking. Testimony before Judge Holtzoff showed that in dealing with a special problem involving contemplated construction of a hospital on one-eighth of an acre on the campus of a local university, the Commission rezoned all 70 acres of the campus without having before it evidence showing that this action bore any reasonable or other relation to the public safety, health, morals or general welfare of the community. The situation in *Prentiss* is thus a far cry from that disclosed by the record covering the action presently before the Court.

■ As Citizens Ass'n of Georgetown, Inc. v. Zoning Comm'n, *supra*, reaffirms, the Court must determine whether the Zoning Commission's decision is arbitrary and capricious, but the review ends there. A careful examination of the record discloses that there was ample evidence to justify the Commission's decision and that it was consistent with the general welfare.

NCPC, testifying through its Director of Long Range Planning and Regional Affairs, offered evidence of the underutilization of the present commercial zoning envelope represented by the significant amount of vacant land, substandard structures, and development of only two new major structures in the area since 1968. It gave further evidence on the value and quantity of real estate transfers and the traffic patterns. In analyzing the city's trends and plans, NCPC pointed out that (1) since only two of the 241 city office buildings constructed from 1959 to 1972 were in this area, the city's commercial development interest has been elsewhere, and (2) this area is in close proximity to housing developments, the authorized civic center, the new downtown Federal City College campus, and the growing central employment area with its increasing work force. These factors clearly support a conclusion that residential use of this area best promotes the renewal and future growth of this city. RLA's testimony was essentially to the same effect. The Metropolitan Washington Planning and Housing Association testified to the general housing needs in the city and in this area, the lack of realistic alternatives to meet certain needs, and the suitability and desirability of this area for residential development. Some property owners in the area also support the change.

■■ While these plaintiffs and others took advantage of their right to offer opposing evidence to the Commission, this Court's task is not to weigh the persuasiveness of the respective positions, but to decide if there is evidence in the record before the Commission to support the statement of reasons given for the action taken and, if so, whether these reasons support Commission Order No. 58. There is ample support, the reasons are sufficient and the action was not arbitrary and capricious. The decision bears a substantial relationship to the general welfare and may not be challenged on this ground.

3. *Ex parte statements.*

■■ Defendants point to documentary evidence indicating that the Zoning Commission received and presumably considered oral and written information, *ex parte*, and that these communications are not a matter of record. This is a most serious charge which cannot be swept away by defendants' assertion that the Commission, when acting in a quasi-legislative capacity, may consider

*ex parte* matters even when submitted by an agency having a major financial stake in the outcome. The Court has a duty to assure that the proceedings before the Zoning Commission were essentially fair, for if the Commission violates its trust by acting for reasons it does not reveal and hence in effect conducts a sham hearing, its actions perforce must be found arbitrary. Numerous decisions, although perhaps not squarely in point, reflect the constant caution of the courts to preserve administrative fair play when *ex parte* influence is responsibly suggested. *See* Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938); Sangamon Valley Television Corp. v. United States, 106 U.S.App.D.C. 30, 269 F.2d 221 (1959); Jarrott v. Scrivener, 225 F.Supp. 827 (D.D.C.1964).

It was for these reasons the Court permitted limited discovery into the *ex parte* phase. The proof now presented to the Court discloses no impropriety. The depositions of various officials of the defendant agencies reveal that the Mayor, who is also chairman of the Zoning Commission, was made aware of a broad public policy problem which concerned the relationship between zoning in the Mount Vernon area and the objectives of RLA and others involved in urban renewal programs. There were open discussions of these matters at a roundtable chaired by Mr. Sterling Tucker, a member of the City Council, and the Zoning Commission was encouraged to take appropriate steps. The staffs of RLA, NCPC and the Commission collaborated to this end. Formal Zoning Commission hearings were scheduled and proceeded to conclusion.

RLA and NCPC coordinated their efforts and after consultation with the Commission's staff assembled data presented at the public hearings that the Zoning Commission staff considered sufficient justification to support downzoning in the area. Before the hearings commenced, some members of the City Council also members of the Zoning Commission were appraised of the urban renewal objectives and conferred with RLA and NCPC. There is nothing, however, to suggest that the Zoning Commission did not ultimately act on the record before it. No doubt it had a sense in advance where it wanted to come out, but it heard the testimony and there was substantial proof supporting its decision. It should also be noted that NCPC is the District's professional planning agency. Citizens Ass'n of Georgetown, Inc. v. Zoning Comm'n, *supra*, 477 F.2d 402 at 410.

There is no proof that during the hearings or while the matter was awaiting decision any *ex parte* comments or data were furnished any member of the Commission. Data developed earlier by the coordinated staff efforts and presented to the Commission was placed in the record.

■ Plaintiffs complain particularly that RLA was an interested party, as indeed it was, and that the Commission was motivated by RLA from the outset to proceed with a hearing and reach a result which accommodated RLA. It is true that RLA was among those who encouraged the Commission to act. It is true the result benefited RLA. But there is no basis for concluding that the Commission acted on an inadequate record or that it failed to reach its conclusions guided by the appropriate statutory standards. The meeting with the Mayor was in May, 1972, an emergency order issued in August, and the public hearings were noticed the end of September. The hearings closed in November and a decision was announced in December. The interest of RLA in the matter was well known and emphasized during the hearings. There is no legal basis for setting aside otherwise valid zoning action merely because it furthers city-wide renewal plans in which RLA and NCPC have a direct interest.

Under these circumstances, the contacts with NCPC and RLA and the staff work complained of here do not defeat the validity of this downzoning order of the Commission. *See* Gerstenfeld v. Jett, 126 U.S.App.D.C. 119, 121, 374 F.

2d 333, 335 (1967); Jones v. District of Columbia, 116 U.S.App.D.C. 301, 304, 323 F.2d 306, 309 (1963).

Plaintiff American Century Mortgage Investors' motion for Summary Judgment and the motions in both cases for preliminary injunction are denied. In each of the captioned cases, defendants' motion for Summary Judgment is granted.

So ordered.