**DUPONT CIRCLE CITIZEN'S ASSOCIA-
TION et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA ZONING
COMMISSION, Respondent,**

**Sheridan-Kalorama Neighborhood Council,
Intervenor,**

**National Capital Planning Commission,
Amicus Curiae.**

**No. 6469.**

District of Columbia Court of Appeals.

Argued En Banc Nov. 6, 1974.

Decided July 31, 1975.

Nicholas A. Addams and Harriet B. Hubbard pro se, for petitioners.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins,

Principal Asst. Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

William H. Greer, Jr., Washington, D. C., for intervenor.

Wallace H. Johnson, Asst. Atty. Gen., Edmund B. Clark and George R. Hyde, Attys., Dept. of Justice, entered appearances amici curiae.

Before REILLY, Chief Judge, and KELLY, FICKLING, KERN, GALLAGHER, NEBEKER, YEAGLEY and HARRIS, Associate Judges.

KELLY, Associate Judge:

Petitioners and the intervenor seek review of Zoning Commission Order No. 47, issued on April 20, 1972, which amends the zoning regulations to allow halfway houses in R–4 and less restrictive districts.[1] Their challenge is directed to the Commission's ruling that the public hearing on the proposed text amendment was not a contested case within the meaning of the District of Columbia Administrative Proce-

---

1. Order No. 47 reads:

That after public notice and hearing as prescribed by law, the following text change established by the Zoning Commission of the District of Columbia, as shown in the Zoning Regulations, is hereby modified and amended:

Case No. 71–31

1. Add new definition (Section 1202) as follows:

"Halfway House or Social Service Center —A community correctional, rehabilitation, assistance or treatment center for persons in need of such assistance. The facilities may include sleeping and dining quarters, meeting and classrooms, and recreation, counseling, and office space related to the program."

2. Add a new paragraph to permit halfway houses or social service centers under government control as a matter of right in the R–4 and less restricted districts as follows:

"3104.312—Halfway House or Social Service Center when operated by an agency of the District or Federal Government or by an organization under contract to such agency and supervised by that agency."

3. Add a new paragraph to permit non-government controlled halfway houses or social service centers as conditional uses, requiring Board of Zoning Adjustment approval, in the R–4 and less restricted districts as follows:

"3104.47—Halfway House or Social Service Center when not operated by an agency of the District or Federal Government or an organization under contract to such agency and supervised by that agency provided:

(a) Such use is so located that it will not become unduly objectionable to the neighboring properties because of noise or other conditions.

(b) The size of the facility will not be out of scale and character with the immediate neighborhood and provided further that no structural changes shall be made except those required by other municipal laws or regulations.

(c) No sign or other indication identifies the nature of the use.

(d) Such authorization of the Board shall be limited to a reasonable period of time not to exceed three (3) years. The Board may renew such authorization."

dure Act (DCAPA).[2] Other contentions advanced are that absent "contested case" status the language of D.C.Code 1973, § 1–1510, nevertheless confers jurisdiction on this court to review the Commission's order, and that the order is unconstitutional, being arbitrary and capricious and having no substantial relation to the public health, safety and welfare. The intervenor argues that the National Capital Planning Commission's (NCPC) [3] failure to include an environmental impact statement [4] in its report to the Zoning Commission on the amendment is reversible error, a position which the amicus Planning Commission opposes.

The respondent Zoning Commission contends that contested case procedures are inapplicable to a hearing on a proposed zoning text amendment and thus the court is without jurisdiction to directly review either its order of April 20, or the applicability of the National Environmental Policy Act (NEPA) to the NCPC's report.

## I

Before the present amendment, halfway houses had been allowed in R–4 districts under the classification of rooming houses.[5] This classification was challenged in court,[6] however, and as a consequence the Board of Zoning Adjustment ultimately concluded that halfway houses were not rooming houses. Because of this controversy the Zoning Commission staff recommended that the zoning regulations be amended and procedures adopted to permit halfway houses in R–4 and less restrictive districts.[7] The staff report noted that the use of halfway houses is an accepted community policy in fighting crime and that the zoning regulations should recognize and permit such a use. It recommended allowing halfway houses as special exceptions to be granted by the Board of Zoning Adjustment. It also recommended that public hearings be held before granting any exceptions and that all exceptions be temporary and subject to renewal.

A public hearing on the proposed halfway house amendment was held on March 29, 1972. The amendment submitted for hearing differed from the original staff recommendation in that it defined the term halfway house, permitted government related houses as a matter of right, and subjected privately funded houses to special exception requirements.[8] Upon completion of the hearing the submitted amendment was adopted without change.

## II

This court has jurisdiction to directly review the actions of the Zoning Commission

2. D.C.Code 1973, § 1–1502(8).

3. *Id.* § 1–1008. Zoning and subdivision functions.
    (a) The [National Capital Planning] Commission may make a report and recommendation to the Zoning Commission of the District of Columbia on proposed amendments of the zoning regulations and maps as to the relation or conformity of such amendments with the comprehensive plan of the District of Columbia. . . .
    For changes in this section, effective January 2, 1975, *see* D.C.Code 1973 Supp. I, § 1–1008(a).

4. National Environmental Policy Act of 1969, § 102(2)(C), 42 U.S.C. § 4332(2)(C) (1970).

5. D.C. Zoning Regulations:
    Section 3104—R–4 Districts (Row Dwellings and Conversions)

3104.1 The R–4 District is designed to include those areas now developed primarily with row dwellings, but within which there have been a substantial number of conversions of such dwellings into dwellings for two or more families. Very little vacant land would be included within this district since its primary purpose would be the stabilization of remaining one-family dwellings. The district would not be an apartment house district as contemplated under the General Residence (R–5) Districts since the conversion of existing structures will be controlled by a minimum lot area per family requirement. (70–18)

6. *Brawner Building, Inc. v. Shehyn*, 143 U.S. App.D.C. 125, 442 F.2d 847 (1971).

7. *See* Staff Report Zoning Revision Group (1970).

8. *Supra* note 1.

in accordance with the District of Columbia Administrative Procedure Act (DCAPA).[9] Under that act our review is limited to decisions or orders in "contested cases",[10] a term statutorily defined as

> . . . a proceeding before the Commissioner, the Council, or any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this chapter), or by constitutional right, to be determined after a hearing before the Commissioner or the Council or before an agency, . . .[11]

■ It is unquestioned that a public hearing must precede a zoning regulation amendment as D.C.Code 1973, § 5–415, which gives the Zoning Commission the power to amend the regulations, provides that:

> . . . Before putting into effect any amendment . . . of said regulations . . . the Zoning Commission shall hold a public hearing thereon. . . .

This statutory right to a hearing does not, standing alone, confer "contested case" status on an administrative proceeding, however, for in *Chevy Chase Citizens Ass'n v. District of Columbia Council,* D.C.App., 327 A.2d 310, 314 (1974), this court stated:

> . . . We therefore interpret the phrase "after a hearing" in the definition of "contested case" to mean after a trial-type hearing where such is implicitly required by either the organic act or constitutional right. (Citations omitted.)

Thus the critical issue is whether or not the hearing required by the zoning act to precede the adoption of zoning amendments is adjudicative or legislative in nature. This is a distinction upon which we have commented before, most recently in *Chevy Chase Citizens Ass'n, supra* at 313:

> An administrative proceeding is primarily adjudicatory—and therefore governed by "contested case" procedural requirements—if it is concerned basically with weighing particular information and arriving at a decision directed at the rights of specific parties. . . . On the other hand, an administrative proceeding is not subject to "contested case" procedural requirements if it is acting in a legislative capacity, making policy decisions directed toward the general public. (Citations and footnote omitted.)

In determining if an administrative hearing is legislative or adjudicative in nature one must examine both the purpose of the hearing and the statutory scheme under which a hearing is held. The zoning act, the applicable statute here, empowers the Zoning Commission to promulgate regulations which divide the city into districts and to regulate in such districts the uses of property.[12] The purpose of these regulations is to promote the health, general welfare, and safety of the public, proper population distribution, civic and recreational activities, and to encourage the stability of the various districts and land values within those districts.[13] Before amending any zoning regulation a public hearing must be held, notice of which must be published thirty days in advance. The notice must contain the time and place of the hearing and a general summary of the proposed amendment. Perhaps the most significant statutory requirement is that at the hearing the Zoning Commission "shall afford any person present a reasonable opportunity to be heard".[14]

■ The standards for both issuing regulations and conducting hearings are indicative of legislative action. In determining

---

9. D.C.Code 1973, § 11–722.

10. *Id.* § 1–1510.

11. *Id.* § 1–1502(8).

12. *Id.* § 5–413.

13. *Id.* § 5–414.

14. *Id.* § 5–415.

that halfway houses should be permitted in R–4 and less restricted districts the Commission is not adjudicating the specific rights of any particular property owner. It is making a legislative decision based on its perception, within the guidelines of D.C.Code 1973, § 5–414, of what policy is best for the city to adopt concerning halfway houses. The public hearing at which all interested citizens are given an opportunity to testify is designed to facilitate the resolution of just such a policy issue and not to adjudicate the specific rights of individuals.

We recognize, of course, that zoning regulations affect all property owners in some manner and that the distinction between legislative and adjudicative proceedings is not always precise. The clearest and most often cited factual distinction is that:

> . . . Adjudicative facts are the facts about the parties and their activities, businesses, and properties. Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion. [1 K. Davis, Administrative Law § 7.02 at 413 (1958).]

■ Naturally, the Zoning Commission may not adjudicate the legal rights, duties or privileges of specific parties under the pretense of legislative action. On the other hand, this court must be careful not to interfere with the legitimate exercise of the Commission's legislative power to promulgate zoning regulations for the District of Columbia. As stated in *American University v. Prentiss*, D.C.D.C., 113 F. Supp. 389, 393, *aff'd*, 94 U.S.App.D.C. 204, 214 F.2d 282, *cert. denied,* 348 U.S. 898, 75 S.Ct. 217, 99 L.Ed. 705 (1954):

> . . . Zoning is an exercise of a legislative power, and not of an executive or administrative authority. The Commission, acting by delegation from Congress, performs a legislative function. The applicable statute sets forth the principles on which the zoning should be made and the administrative body carries out the details. . . .

An examination of the record here reveals a proper exercise of legislative power within statutory guidelines. At the public hearing testimony and written comments were taken from penologists, sociologists, present and former halfway house residents, clergymen, citizens' associations and individual citizens. Some proponents of the amendment urged that halfway houses both government and private be allowed as a matter of right while others urged that houses be allowed in all zoning districts. Some opponents testified that although halfway houses may be necessary they should not be located in R–4 districts and others objected to the lack of hearings before permitting government-funded houses into a neighborhood. Some even agreed with the proponents who wanted houses allowed in all districts based on the rationale that the social burden of halfway houses should be shared by all. Additionally, the opponents inserted into the record numerous newspaper articles reciting a number of crimes alleged to have been committed by halfway house residents. In all, a wide cross section of the community stated their views, pro and con, about the proposed amendment to the Zoning Commission.

There were no outright assertions that halfway houses should be prohibited entirely. The chief objections were to the location of the houses in R–4 and less restrictive districts and to the procedures to be followed before allowing houses into a neighborhood. In essence all tacitly admitted that halfway houses may be necessary but none wanted such houses, or a concentration of such houses, in their neighborhood.

All questions raised at the hearing were of a basic policy nature, e. g., where to locate halfway houses, what procedures to follow, how do halfway houses affect neighborhoods, etc. None fit into the definition of adjudicative facts, i. e., "who did what, where, when, how, why, with what motive or intent". This is not to say that a hearing before the Zoning Commission may never be a "contested case",[15] but rather that if the proposed action is correctly labeled a zoning amendment then the proceeding to enact it is legislative and there is no entitlement to an adjudicatory hearing.

In concluding that the proceeding before the Zoning Commission was legislative in nature and not subject to "contested case" procedural safeguards, we do not review the underlying merits of any questions or issues raised at the hearing. Our ruling is that the adoption of Order No. 47 was a legislative act which we lack jurisdiction to consider on direct review.[16]

### III

■ Petitioners' contention that absent "contested case" status we nevertheless have jurisdiction to directly review the Zoning Commission's order is unsound. The contention is based on that portion of D.C.Code 1973, § 1–1510, which states:

. . . In all other cases the review by the court of administrative orders and decisions shall be in accordance with the rules of law which define the scope and limitations of review of administrative proceedings. Such rules shall include, but not be limited to, the power of the court—

*   *   *   *   *   *

(3) to hold unlawful and set aside any action or findings and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations or short of statutory jurisdiction, authority, or limitations or short of statutory rights; (D) without observance of procedure required by law, including any applicable procedure provided by this chapter; or (E) unsupported by substantial evidence in the record of the proceedings before the court.

Petitioners assert that this language is a grant of jurisdiction to review all orders which are not "contested cases". This is a misinterpretation of the statute, however, because it ignores the immediately preceding sentence that:

. . . The review of all administrative orders and decisions by the court shall be limited to such issue of law or fact as are subject to review on appeal under applicable statutory law, other than this chapter. In all other cases the review by the court of administrative orders and decisions shall be in accordance with the rules of law which define the scope and limitations of review of administrative proceedings. Such rules shall include, but not be limited to, the power of the court—

The sentences when read together and in conjunction with the first sentence in the section that:

Any person suffering a legal wrong, or adversely affected or aggrieved, by an

---

15. *Capitol Hill Restoration Soc. v. Zoning Commission*, D.C.App., 287 A.2d 101 (1972).

16. The dissent's reliance upon "remarks" or "pronouncements" of the court in *Allen v. Zoning Commission of Dist. of Col.*, 146 U.S.App.D.C. 24, 27–28 n. 3, 449 F.2d 1100, 1103–04 n. 3 (1971), is somewhat puzzling since that court was careful to point out that:

Whether, and to what extent, the Act, and particularly D.C.Code § 1–1509(d), modifies prior law was a question neither briefed nor discussed by the parties at oral argument. Consequently our decision here reflects only our interpretation of the law in effect at the time of the hearing, i. e., the zoning law unaided by the Administrative Procedure Act.

order or decision of the Commissioner or Council or an agency in a contested case, is entitled to a judicial review thereof in accordance with this chapter upon filing in the District of Columbia Court of Appeals a written petition for review. . . .

denote not a grant of jurisdiction, but rather a plain statement of the scope of judicial review applicable only to contested cases. Petitioners' substantive arguments based on the quoted portion would be valid only if their basic premise were correct, *i. e.,* that the proceeding is a contested case. Since our ruling is to the contrary, we reject without consideration the arguments based on an erroneous interpretation of Section 1–1510.

The rejection of direct appellate review in this case clearly does not conflict with this court's holding in *Hotel Association of Washington, D. C. v. District of Columbia Minimum Wage and Industrial Safety Board,* D.C.App., 318 A.2d 294 (1974), as the dissent contends. It is true that the cases are similar in that both address the question of the interaction of a separate and distinct statutory scheme with the DCAPA. In the *Hotel* case, this court interpreted D.C.Code 1973, § 36–409(a), which provides that:

> Any person aggrieved by an order of the Commissioners issued under this subchapter may obtain a review of such order in the District of Columbia Court of Appeals . . . .. The review shall be governed by the District of Columbia Administrative Procedure Act (D.C.Code secs. 1–1501 to 1–1510)

to mean that its reference to the DCAPA applied to the standard of review to be used on an appeal from a minimum wage

order and not that it precluded direct review of minimum wage orders, which are issued after hearings in noncontested cases. Emphasis was placed on the fact that Congress conferred the appellate jurisdiction of § 36–409(a) after the effective date of the DCAPA and that other sections of the Minimum Wage Act contained hearing requirements which were in conflict with the "contested case" requirements of the DCAPA. Our conclusion was that Congress intended only that the DCAPA standard of review should apply to appeals from minimum wage orders. Thus the organic act itself provided for review of administrative decisions of the Minimum Wage Board which are not contested cases within the meaning of the DCAPA. No such grant of jurisdiction exists in the organic act here in question. Our jurisdiction, if any, rests solely on the general review provisions of D.C.Code 1973, § 11–722, and the "contested case" requirements of the DCAPA. Thus the two cases, while similar, rest on two distinct grants of appellate jurisdiction.

### IV

The mere fact that an act of the Zoning Commission is legislative in nature does not, of course, foreclose judicial review.[17] Such review is limited, however, for the court explained in *American University v. Prentiss, supra* at 394, that:

> . . . The action of zoning authorities is not to be held invalid unless the court is convinced that it is clearly arbitrary and unreasonable, having no substantial relation to the public safety, health, or morals, or the general welfare. If such substantial and reasonable relation does not exist, limitations imposed

17. There exists, also, the traditional non-judicial review of legislative acts by the electorate. However attenuated this reasoning may have been prior to home rule when members of the Zoning Commission were presidential appointees, the advent of an elected Mayor and City Council has given the electorate a stronger voice in who will sit on the Zoning Commission. The majority of the five-man Zoning Commission are now appointed by the Mayor with the advice and consent of the City Council. D.C.Code 1973 Supp. I, § 5–412.

by a zoning order constitute a taking of property without due process of law, either under the Fifth or the Fourteenth Amendment, whichever is applicable.

■ Petitioners urge that if the court rejects the argument based on the meaning of Section 1–1510, this standard should be applied and the order declared unconstitutional. While petitioners plead the correct standard for reviewing legislative acts, the plea is addressed to a court which lacks jurisdiction to apply it. This court is simply not the proper forum to initiate litigation on constitutional matters. We are an appellate court not a court of original jurisdiction, and we rule on issues only after a decision has been entered by a trial court or by an agency in a contested case.[18] Since this appeal is from neither, it must be dismissed for lack of jurisdiction.[19]

*So ordered.*

KERN, Associate Judge (concurring) :

I am constrained by this court's decision in *Chevy Chase Citizens Ass'n v. District of Columbia Council,* D.C.App., 327 A.2d 310 (1974), to agree with the majority. There, a majority of the court (at 314) construed the statutory phrase "after a hearing" contained in the District of Columbia APA definition of "contested case" to mean "after a *trial-type* hearing". In my view the "public hearing" which the Zoning Commission is required by Section 5–415 to hold before putting into effect the amendment of the zoning regulations concerning halfway houses in this case cannot be deemed a trial-type hearing. Hence we do not have a contested case before us, and

in the absence of a showing of any other basis for jurisdiction in this court, I agree that the appeal must be dismissed.

GALLAGHER, Associate Judge (concurring) :

I think it may be worthwhile to add some comments as the problems here involved have now resulted in closely divided votes in several en banc cases.

The underlying issues here are: (a) whether interested persons (the petitioners) are entitled to trial-type procedures or quasi-legislative type procedures at a Zoning Commission public hearing on a proposed amendment to the city-wide zoning map and (b) depending upon the answer to that question, are petitioners entitled to *direct* review in this court. To find the answers, there are two statutes to be examined, as well as the body of administrative law. The first statute to be consulted, of course, is the organic act of the Zoning Commission (D.C.Code 1973, § 5–412 *et seq.*). There is found the nature of the administrative process involved and the type of agency hearing envisaged. If the organic act does not indicate the type of hearing involved, one may well then examine the DCAPA (D.C.Code 1973, § 1–1501 *et seq.*) to determine the applicable procedures contained therein and, absent governing appellate provisions in the organic act, what appellate remedies are available. To put it another way, one would hardly expect to find the controlling answers on the nature of a zoning hearing in the DCAPA. Rather, this is found in the organic act of the Zoning Commission and pertinent decisional law.[1]

---

18. D.C.Code 1973, §§ 11–721, 11–722.

19. The dismissal of this action makes it unnecessary to meet the merits of intervenor's claim that NEPA requires the NCPC to include an environmental impact statement in its report to the Zoning Commission.

1. The agency's organic act or its legislative history may specify that either formal rule-

making, informal rulemaking, or adjudication procedures are to be used and thus whether a trial-type hearing is to be afforded. *See,* e. g., *International Harvester Company v. Ruchelshaus,* 155 U.S.App.D.C. 411, 425–26, 478 F.2d 615, 629–30 (1973). Some agency organic acts are not that specific. Absent this specificity, the DCAPA requires one to determine whether the rights, duties, or privileges of specific parties are being determined.

In construing the DCAPA, it is enlightening to look to the Uniform Law Commissioners' Revised Model State Administrative Procedure Act [2] (Model State APA) and the Federal APA [3] because the DCAPA was modelled largely upon the Model State APA [4] which, in turn was, naturally enough, modelled upon the Federal APA.[5]

Examining the Zoning Commission statute, one finds that before a zoning regulation may be adopted there must be a public hearing, with *notice published* thirty days in advance of the proposed amendment together with the time and place for the hearing. At the hearing the Commission must "afford *any person present* a reasonable opportunity to be heard." [6] (Emphasis

added.) This hardly bespeaks trial-type adjudication.[7]

The decision of the United States Circuit Court in this jurisdiction, *Allen v. Zoning Commission,* 146 U.S.App.D.C. 24, 27, 449 F.2d 1100, 1103 (1971), cited by the dissent, states the nature of the usual zoning hearing:

. . . The zoning law contemplates situations that directly affect the interests of local property owners, singly and en masse, and a type of hearing that frequently involves (such as here) direct participation by the property owner themselves in local citizen protest-type appearances to demonstrate community sentiment. Such hearings could be char-

---

D.C.Code 1973, § 1–1502(8). If they are, then trial-type procedures must be afforded because it is a "contested case." D.C.Code 1973, § 1–1509(b).

2. A copy of the 1961 version of the Act may be found in the Appendix to 2 Cooper, State Administrative Law (1965). The 1970 version of the Act may be found in Appendix B to Davis, Administrative Law (3rd ed. 1972).

3. 5 U.S.C. § 551 *et seq.* (1970).

4. The DCAPA is said to have some modifications to fit the peculiar local jurisdictional scene. Rather than employ the section of the Federal APA relating to "adjudication" the Model State APA employed the section entitled "contested cases" for the stated reason that:
The term "contested case" is used in the Model Act, instead of the word "adjudication" as found in the Federal Act, to avoid the possible confusion in terminology that might result from the fact that ratemaking under the Federal Act is classified as "rule making" with special procedures applicable to it, whereas under the Model Act it is desired to apply the contested case procedures to ratemaking. [National Conference of Commissioners on Uniform State Laws Handbook 207 (1961), cited in *Capitol Hill Restoration Society v. Zoning Commission,* D.C.App., 287 A.2d 101, 104 (1972).]
There is little difference essentially between a "contested case" and "adjudication." In *Chevy Chase Citizens Ass'n v. District of Columbia Council,* D.C.App., 327 A.2d 310, 313 (1974) (en banc), we stated:

The term [contested case] is taken from the definition in the Revised Model State Administrative Procedure Act of 1961 . . . and is intended to be synonymous with adjudication as defined by the Federal Administrative Procedure Act . . . with the exception of ratemaking. . . . (Citations omitted.)

5. *Capitol Hill Restoration Society v. Zoning Commission, supra* at 104.

6. D.C.Code 1973, § 5–415.

7. A recent article dealing with the federal APA warns against judicially requiring trial-type procedures unless they are specifically required.
In adopting the APA, Congress established the notice and comment procedure of section 553 as the normal pattern for agency rulemaking. *Judicial* requirement of further procedures for general rulemaking may impair administrative efficiency and conflict with the congressional purpose of prescribing uniform procedures. Therefore, courts should be reluctant to infer additional procedural requirements from regulatory statutes unless those procedures are clearly necessary to effectuate the statutory intent. . . . Note, *The Judicial Role In Defining Procedural Requirements For Agency Rulemaking,* 87 Harv.L.Rev. 782, 805 (1974). (Emphasis added.)
If this is true on the federal scene it should be even more evident on the local scene where formal rulemaking procedures are rare, except perhaps for utility ratemaking.

acterized as being of the grass roots type. One of their features is that they provide for a face-to-face encounter between the official who is to decide and the citizens whose rights are to be determined.

On the other hand, hearings in the federal agencies are more formal. They are usually fully transcribed and reported, involve the presentation of evidence in *judicial type proceedings* by counsel, and other representatives of the interested parties, who are in a large number of cases frequently corporations who in turn represent many thousands of shareholders. There are of course many federal hearings in which the individuals involved directly participate but their issues, formality, recording procedures, and the degree to which the interested parties are represented completely by counsel, distinguish them generally from the local grass roots-direct confrontation hearings. (Emphasis added.)

Nothing in the DCAPA changes or was intended to change the nature of a zoning hearing, which as the circuit court noted once again in *Allen, supra,* is a legislative-type proceeding. "The Act (DCAPA) does not confer any new substantive powers; it does not require hearings where hearings were not required before nor does it impose on the District agencies rulemaking prerequisites that will be unduly difficult with which to comply." District of Columbia Administrative Practice Manual, 5 (1969). For the nature of the usual zoning proceedings, *see also Citizens Asso-*

*ciation of Georgetown, Inc. v. Washington,* D.C.App., 291 A.2d 699 (1972); *Citizens Association of Georgetown, Inc. v. Zoning Commission,* 155 U.S.App.D.C. 233, 477 F. 2d 402 (1973); *Ruppert v. Washington,* 366 F.Supp. 686 (D.D.C.1973), *appeal docketed,* No. 73–1985, U.S.App.D.C., Aug. 6, 1973, and *American University v. Prentiss,* 113 F.Supp. 389 (1953), *aff'd,* 94 U.S. App.D.C. 204, 214 F.2d 282, *cert denied,* 348 U.S. 898, 75 S.Ct. 217, 99 L.Ed. 705 (1954). Consequently, it is evident that city-wide and area zoning are rulemaking in character.[8] In this case, there does not appear to be any dispute on that proposition.

This leads to the specific problems on which this court has split not only here but in other en banc cases.[9] The issues are: (a) what type of hearing were petitioners entitled to before the Zoning Commission and (b) do petitioners have a right of direct appeal to this court.

The dissenting opinion acknowledges that rulemaking is here involved but goes on to say "how the premise ever developed that such action [rulemaking] should be treated differently under the Administrative Procedure Act from the adjudicatory process remains shrouded in mystery." What that seems to say is that under the DCAPA all rulemaking should be considered by the agency to be adjudicatory (trial-type) for hearing purposes, a rather novel concept in administrative law, especially since the DCAPA (and APA's generally) provide vastly different procedures for rulemaking and adjudication (contested cases).[10]

---

8. D.C.Code 1973, §§ 1–1502(6) and 1–1505.

9. In *Paul v. District of Columbia Zoning Commission,* D.C.App. (No. 8185, Order entered May 2, 1975) this court announced an evenly divided vote on this same question; *see also Chevy Chase Citizens Ass'n v. District of Columbia Council, supra,* and *Hotel Ass'n of Washington v. District of Columbia Minimum Wage and Industrial Safety Board,* D.C.App., 318 A.2d 294 (1974) (en banc).

10. As has been authoritatively stated in reference to the parent federal APA, "[t]he Administrative Procedure Act prescribes radically different procedures for rule making and adjudication. Accordingly, the proper classification of agency proceedings as rule making or adjudication is of fundamental importance. . . . More broadly the entire Act is based upon a dichotomy between rule making and adjudication. . . . Not only were the draftsmen and proponents of the bill aware of this realistic distinction between rule mak-

To support this proposition, the dissent (a) notes that rulemaking is envisaged in the DCAPA (§ 1–1502(7)) and (b) points out that § 1–1509 which sets forth the procedures in "contested cases", covers rulemaking as well as adjudication because § 1–1509 refers to the proponent of a "rule or order." The conclusion is then somehow drawn that by "judicial fiat" the court is reading the word "rule" out of the Act.

While the DCAPA may be no model of clarity in some respects, for reasons I will later set forth, I see no reason to conclude that it has departed from the fundamentals of administrative law. Preliminarily, it is important to remain aware that the underlying issue on this aspect of the case is whether interested persons are entitled to a trial-type hearing or a quasi-legislative type hearing in a proceeding before the Zoning Commission involving a proposed amendment to the city-wide zoning map.[11] Before reaching what I believe to be the principal error in the dissent, it might be well to lay some background.

As we know, there are principally two substantive functions in administrative law: rulemaking and adjudication. Agencies perform the functions in three ways: by formal rulemaking, informal rulemaking, and trial-type adjudication.[12] In *Jones v. District of Columbia*, 116 U.S.App.D.C. 301, 303–04, 323 F.2d 306, 308–09 (1963), rulemaking which is quasi-legislative in nature was distinguished from adjudication which is by its nature quasi-judicial:

A legislative hearing relates to "the making of a rule for the future." As distinguished from a judicial inquiry, it is a non-adversary proceeding which seeks to devise broad policy applicable to the public generally, or a substantial segment thereof, rather than to individual parties. . . . (Citation and footnote omitted.)

The Federal Administrative Procedure Act includes two types of rulemaking. "One, known as 'formal' rulemaking, borrowed heavily from the adjudicative model in that it was required to be 'on the record after opportunity for an agency hearing.' The alternative rulemaking provision, 'informal' rulemaking, required notice of a proposed rule to a broad class of participants, the opportunity to comment upon the rule, and a contemporaneous statement by the agency when it enacted the rule." Verkuil, *Judicial Review of Informal Rulemaking,* 60 Va.L.Rev. 185, 186 (1974). (Citations omitted.)

Thus, the hearing procedures to be adopted depend essentially on the nature of the substantive administrative process involved. If informal rulemaking is involved, the hearing procedure to be followed is what is commonly referred to as "notice and comment" rulemaking.[13] *Verkuil, supra* at 186–87. If formal rulemaking is required, the hearing procedures to be followed are essentially the same as those for adjudication:

In essence, the APA applies the same procedures to formal rulemaking as to

---

ing and adjudication, but they shaped the entire Act around it." Attorney General's Manual on the Administrative Procedure Act, 12, 14, 15 (1947).

11. As I understand it, there is nowhere involved here the validity of any specific action of the corrections department of the local government. We are here simply considering the procedural nature of the Zoning Commission proceeding involved.

12. I am aware of the rather subdued controversy between some of the federal circuit courts concerning judicial review of informal

rulemaking. *Cf. Automotive Parts & Accessories Ass'n v. Boyd,* 132 U.S.App.D.C. 200, 407 F.2d 330 (1968), with *Associated Industries of New York State, Inc. v. United States Department of Labor,* 487 F.2d 342 (2nd Cir. 1973). *See also* Wright, *The Courts And The Rulemaking Process: The Limits of Judicial Review,* 59 Cornell L.Rev. 375 (1974). But these problems are nowhere involved here.

13. The "comments" may be either written or oral (at the hearing), or both. *See,* D.C.Code 1973, § 1–1505.

adjudication, including a hearing with cross-examination before an administrative judge. 5 U.S.C. §§ 556–557 (1970). *Verkuil, supra* at 186 n. 1.

*See also Wirtz v. Baldor Electric Co.,* 119 U.S.App.D.C. 122, 125 n. 4, 337 F.2d 518, 521 n. 4 (1964).[14]

The trial-type procedures of the Federal APA, 5 U.S.C. §§ 556–557 apply to adjudication and formal rulemaking, but they do not apply to informal rulemaking. *Automotive Parts & Accessories Association v. Boyd,* 132 U.S.App.D.C. 200, 203 n. 4, 407 F.2d 330, 333 n. 4 (1968). This is informative as background for the issue here involved. It is necessary to appreciate the distinction in order to understand the issue.[15]

The decision of the Supreme Court in *United States v. Allegheny-Ludlum Steel Corp.,* 406 U.S. 742, 756–58, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972), is instructive on this question. There, Justice Rehnquist, speaking for a unanimous court, laid out the fundamentals in discussing the contention that the Interstate Commerce Commission should have granted a formal rulemaking hearing (of the adjudicatory type) under 5 U.S.C. §§ 556 and 557 (the Federal APA) rather than an informal rulemaking hearing under 5 U.S.C. § 553. The opinion explains that the formal rulemaking procedures "govern a rule-making proceeding only when 5 U.S.C. § 553 so requires."

The latter section, dealing generally with rulemaking, makes applicable the provsions of §§ 556 and 557 only "[w]hen rules are *required by statute* to be made *on the record after opportunity for an agency hearing . . . ."* [16] The Esch Act, authorizing the Commission "after hearing, on a complaint or upon its own initiative without complaint, [to] establish reasonable rules, regulations, and practices with respect to car service . . . ," 49 U.S.C. § 1(14)(a), does not require that such rules "be made on the record." 5 U.S.C. § 553. That distinction is determinative for this case. "A good deal of significance lies in the fact that some statutes do expressly require determinations on the record." 2 K. Davis, Administrative Law Treatise § 13.08, p. 225 (1958). Sections 556 and 557 need be applied "only where *the agency statute,* in addition to providing a hearing, prescribes explicitly that it be 'on the record' " *Siegel v. Atomic Energy Comm'n,* 130 U.S.App.D.C. 307, 314, 400 F.2d 778, 785 (1968); *Joseph E. Seagram & Sons, Inc. v. Dillon,* 120 U.S.App.D.C. 112, 115 n. 9, 344 F.2d 497, 500 n. 9 (1965). Cf. *First National Bank of McKeesport v. First Federal Savings & Loan Assn.,* 96 U.S.App.D.C. 194, 225 F.2d 33 (1955). We do not suggest that only the precise words "on the record" in the applicable statute will suffice to make §§ 556 and 557 applicable to rulemaking proceedings, but we do hold

14. Adjudicative procedures in federal agencies are governed by 5 U.S.C. § 554(c)(2) which requires a hearing in accordance with 5 U.S.C. §§ 556 and 557. Informal rulemaking procedures are governed by 5 U.S.C. § 553. However, 5 U.S.C. § 553(c) requires that "[w]hen rules are *required by statute* to be made *on the record after opportunity for an agency hearing,* sections 556 and 557 of this title apply instead of this subsection." (Emphasis added.) When sections 556 and 557 apply, the process is called "formal rulemaking." *United States v. Allegheny-Ludlum Steel Corp.,* 406 U.S. 742, 756–57, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972).

15. There is nothing so peculiar about the local jurisdiction, as far as I am aware, which should cause us to disregard appropriate guidance in the parent legislation in administrative law (the Federal APA) or the body of administrative law as it has developed over the decades.

16. Over the years the phrase "on the record after opportunity for an agency hearing" in the agency's organic act has become the watchword requiring an adjudicatory type hearing:

    [T]he mere presence of statutory language like "hearing" unless made unmistakenly clear as by the addition of "on the record," will not serve to define the required procedures. *Verkuil, supra* at 196.

that the language of the Esch Car Service Act is insufficient to invoke these sections.

Because the proceedings under review were an exercise of legislative rulemaking power rather than adjudicatory hearings as in *Wong Yang Sung v. McGrath,* 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950), and *Ohio Bell Telephone Co. v. Public Utilities Comm'n,* 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937), and because 49 U.S.C. § 1(14)(a) does not require a determination "on the record," the provisions of 5 U.S.C. §§ 556 and 557 were inapplicable. (Emphasis added.) [17]

In deciding cases raising the issue of the *direct* reviewability in this court of cases coming from administrative agencies this court has laid down two rules as the result of its interpretation of the District of Columbia Administrative Procedure Act (DCAPA) and the organic acts of the particular agencies involved. This court has decided that in accordance with the express provisions of the DCAPA we have *direct* review powers [18] only over "contested cases", those cases which determine the rights of specific parties and must be accompanied by "trial-type" proceedings.[19] *See* D.C.Code 1973, § 1–1502(8) for description in the DCAPA of a "contested case" and § 1–1509 for the procedural requirements of a contested case. Where, however, an organic act of an agency authorizes this court to entertain a petition for review we have of course accepted direct review jurisdiction in such cases as directed by Congress.[20] Needless to say, however, individuals considering themselves aggrieved, in a judicially cognizable sense, always have access to the trial court for review in an original proceeding (*e. g.,* prohibitory injunction, mandatory injunction and declaratory judgment).[21] If unsuccessful there, they later have access to this court to contend, for example, that the agency action was arbitrary and capricious or otherwise deprived them of statutory or constitutional rights. Typically, this procedure is available as a result of agency legislative type proceedings, usually referred to as the "informal rulemaking" type. *See, e. g., Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (declaratory judgment and injunction) and *District of Columbia v. Green,* D.C.App., 310 A.2d 848 (1973) (injunction). The ultimate issue here does not involve whether the petitioner is entitled to judicial review but, rather, whether under existing law a review lies by way of *direct* appeal to this court or by way of a proceeding filed initially in the trial court. There is nothing novel about the latter course.[22] The Model State APA provides for review of all administrative agency proceedings, *whether "contested cases" or rulemaking,* to commence in the state trial court of general jurisdiction.[23] In Maryland, for example, the state code provides for review of *both rules and contested cases* in the circuit court of the county, this being the trial court of general jurisdiction. Ann.Code of Md., art. 41, §§ 249 and 255 (1971).

---

17. Thus, for the reasons there stated, the Court ruled out formal rulemaking (trial-type) procedures.

18. D.C.Code 1973, § 1–1510. *See, e. g., Capitol Hill Restoration Society v. Zoning Commission, supra* and *Chevy Chase Citizens Ass'n v. District of Columbia Council, supra.*

19. As the majority opinion states, what is involved here is an amendment of the city-wide zoning map.

20. *Hotel Ass'n v. District of Columbia Minimum Wage and Safety Board, supra.*

21. *See, e. g.,* Model State APA, § 7 (1961), Ann.Code of Md., art. 41, § 249 (1971), 5 U.S.C. § 703 (1970), and *Chevy Chase Citizens Ass'n v. District of Columbia Council, supra* at 317 n. 18.

22. Because of the nature of injunction proceedings they traditionally receive expedited treatment in the trial court and in this court. So the time factor may not be appreciably more, or may be less, than the period involved in a direct appeal to this court.

23. Model State APA §§ 7 and 15 (1961).

On the national scene, the federal APA carries these review provisions:

A person suffering legal wrong because of agency action, *or adversely affected* or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. 5 U.S.C. § 702 (1970).

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. . . . 5 U.S.C. § 704 (1970).

The form of proceeding for judicial review is *the special statutory review proceeding* relevant to the subject matter *in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including* actions for *declaratory judgments* or *writs of prohibitory or mandatory injunction* or habeas corpus, in a court of competent jurisdiction. . . . 5 U.S.C. § 703 (1970). (Emphasis added.)

Returning to the main thrust of the dissent, it focuses on the provision in the DCAPA which states that in "contested cases" the "proponent of a rule or order shall have the burden of proof." (§ 1–1509(b)).[24] It goes on to say that since the DCAPA envisages rulemaking in §§ 1–1502(7) and 1–1509(b), the majority is reading the word "rule" out of the Act. As I understand it, the majority opinion is not doing this at all. It specifically classifies the action of the Zoning Commission as a legislative act by nature—which is another way of saying that, essentially, informal rulemaking is here involved (*see, e. g.,* § 1–1505).

Turning to the dissent's point concerning a reference to "rule or order" in § 1–1509(b), it is apparent that (a) this provision appears in the section of the DCAPA relating only to hearing procedures in "contested cases" (adjudication) and (b) it is modelled *exactly* upon the terminology of the section in the federal APA which sets forth the hearing procedures in *formal rulemaking and adjudication* (5 U.S.C. § 556(d)) both of which require trial-type hearing procedures.[25] This reference to "rule or order" is consequently of no significance on the issues here involved. The reason it has no significance is that (a) it simply jumps the issue of what type hearing is required in a city-wide *zoning hearing* and (b) it refers to a provision in the section of the DCAPA setting forth hearing procedures where *adjudication* is involved. There is nothing startling about the reference to "rule or order" in this section as rulemaking requires such adjudicatory procedures if it is "formal rulemaking", *United States v. Allegheny-Ludlum Steel Corp., supra,* though this type of rulemaking is seldom apt to be required in municipal administrative law, one exception being utility ratemaking. D.C.Code 1973, § 43–401 *et seq.*

It has occurred to me that the dissenting view in this case could be prompted in large part because of a gap in the DCAPA which may have resulted from the unusual jurisdictional situation which existed here when it was enacted in 1968. At that time, jurisdiction over local matters was divided between the United States District Court and the then Court of General Sessions (now the Superior Court) and, upon review, the United States Court of Appeals on the one hand and the District of Columbia Court of Appeals on the other hand, with jurisdiction in the Court of General Sessions being then limited to $10,000. Significantly, in the judicial review provi-

---

24. The dissent nowhere comes to grips with the underlying question of which avenue of review is open in a *non* "contested case". It is not a question of *whether* an avenue of review is open but which review course, *i. e.,* direct review in this court or review by an equity proceeding instituted in the trial court.

25. *See, e. g., Automotive Parts & Accessories Ass'n v. Boyd, supra* at 203 n. 4, 407 F.2d at 333 n. 4.

sions of the DCAPA as originally enacted (D.C.Code 1969 Supp., § 1–1510), which was the period of this dual jurisdiction in local matters, this court was barred from reviewing decisions and orders of the Zoning Commission and other agencies as well. Doubtless, this was due to the then prevailing jurisdictional situation just related. Instead, judicial review was then left "in those courts which review orders and decisions of those agencies on the date before enactment" of the DCAPA. Transcribed, this left such review jurisdiction in the United States District Court initially (*e. g.,* by prohibitory injunction or mandatory injunction) and, upon review, in the United States Court of Appeals for the District of Columbia Circuit. When the Court Reorganization Act was later enacted in 1970, some sketchy amendments of a conforming nature were made in relation to the local administrative agencies but no major review of the local administrative law scene is apparent. For one thing, when the Reorganization Act was being considered it was yet too early for an accumulation of case law experience under the DCAPA. As a consequence, the DCAPA still does not contain a section specifically providing for a mode of review to contest the validity of a rulemaking proceeding, as is the case with the Model State APA, § 7 (1961), and Ann.Code of Md., art. 41, § 249 (1971). This gap may be a contributing factor to the division in this court in this area of the law. I certainly do not view this void as requiring adoption of the dissenting view because the DCAPA, as drawn, *limits* direct review in this court to "contested cases." This leaves aggrieved persons in noncontested cases to the traditional mode of review by way of an equitable action in the trial court.[26] It would be

a relatively simple matter, however, for the legislature to rectify this omission in the interest of more clarity in the matter of informal rulemaking review.

To say that the legislature deliberately left out this procedure would be to construe it as abandoning *informal rulemaking* by the local agencies, since all hearings would become adjudicatory. This would be a horrendous departure from the essence of administrative law.[27] This construction of the DCAPA would be open to the court only if the Act unmistakably so required. If Congress had intended in the DCAPA to change administrative law in its fundamentals, it would certainly have made this plain. Moreover, such a construction of the DCAPA would require that here we ignore the agency's organic act which is controlling and, as demonstrated, clearly envisages a proceeding with the character of informal rulemaking.

As I have stated, it is elementary that one must examine the organic act of the agency to determine the nature of the administrative proceeding required. Furthermore, the DCAPA specifically states that it "shall *supplement* all other provisions of law establishing procedures to be observed by the . . . agencies . . . except that this chapter shall supersede any such law and procedure *to the extent of any conflict* therewith." (§ 1–1501) (Emphasis added.) It does not repeal such "other provisions of law" it simply *supplements* them, that is to say, it adds to or fills any deficiencies, principally in the pertinent organic act.[28] While it is specifically intended to "supersede" to the extent of any conflict with the DCAPA, I fail to

---

26. As I have indicated earlier, there is nothing unusual in administrative law about this mode of review of rulemaking; *See* Model State APA, § 7 (1961) and Ann.Code of Md., art. 41, § 249 (1971).

27. *Cf.* note 10, *supra.* The dissent seems to be saying that when a hearing is provided for by statute it follows from this fact alone

that it must be a trial-type hearing. This is contrary to basic administrative law.

28. *Cf., e. g., PBW Stock Exchange, Inc. v. Securities and Exchange Commission,* 485 F.2d 718 (3rd Cir. 1973), *cert. denied,* 416 U.S. 969, 94 S.Ct. 1992, 40 L.Ed.2d 558 (1974).

see any such conflict in this case.[29] Certainly, a reference to a "rule or order" in the section setting forth *hearing procedures* in *"contested cases"* does not establish a conflict with the Zoning Commission statute in the matter of the type of agency hearing there envisaged and as illuminated by the decisional law on the nature of a zoning hearing. And, once again, there is nothing in the DCAPA to require a construction which, realistically viewed, would effectively eliminate informal rulemaking in city-wide and area zoning cases and require instead adjudicative hearings.[30] The effect of such a construction would be to decimate informal rulemaking in this jurisdiction and thereby negate the body of administrative law in one of its main essentials.

It is not at all the situation, as the dissent appears to say, that as a result of this court's decisions, affected individuals are "not even entitled to have their grievance reviewed" in this court. Nor is it the case that the DCAPA is being ignored. The string of controversies in zoning cases has arisen in this court because interested individuals appearing before the Zoning Commission have contended that they are entitled to judicial (trial) type proceedings at those zoning hearings,[31] a contention which the court's opinion here should lay to rest. I think, in net effect, the dissenting opinion legislates the result it reaches. If the legislature wishes it otherwise, it is for that body to say and not this court.[32]

29. Contrary to the dissent, in *Wallace v. District Unemployment Compensation Board,* D.C.App., 289 A.2d 885 (1972), we essentially held, in pertinent part, that the nature of the proceedings before the Board under its organic act met the definition of a "contested case" in the DCAPA (D.C.Code 1973, § 1–1501) and therefore the contested case procedures of the DCAPA must be observed by the Board. As we had indicated previously in *Woodridge Nursery School v. Jessup,* D.C.App., 269 A.2d 199 (1970) (also an unemployment compensation case), the proceeding required an agency determination of the "legal rights, duties or privileges of *specific parties*" and was therefore a "contested case." (Emphasis added.) *Id.* at 201. In the instant case, we hold that a city-wide map amendment proceeding before the Zoning Commission does not decide, primarily, the rights or privileges of specific parties and is therefore not a contested case.

30. In an injunction proceeding in the United States District Court in this jurisdiction attacking an order of the Zoning Commission involving an area of the city known as Mount Vernon Square East, the court stated significantly " . . . the proceedings are quasi-legislative in character, not adjudicative in nature. . . . Thus all the strictures of the District of Columbia Administrative Procedure Act, D.C.Code § 1–1501 *et seq.*, and the full range of due process protections *necessary to an adversary* adjudication are not applicable." *Ruppert v. Washington, supra* at 688, (Gesell, J.). (Emphasis added.)

31. In *Capitol Hill Restoration Society v. Zoning Commission, supra,* which involved a zoning hearing of a particular sort, *i. e.,* on application for a planned unit development, this court held it to be a "contested case" for the reasons there stated. As a result, the Zoning Commission later adopted a rule for hearings in regard to planned unit developments and certain amendments of the zoning map. 20 D.C.C.R., § 2.22. Assuming the rule is adequately drawn, a question not reached, I see no reason why the agency should not proceed in that manner when the specified conditions are met. That course is certainly open to the Commission.

32. It does seem to me, however, that it is unnecessarily wasteful of the time and resources of all concerned to require an appellate ruling on whether each specific agency proceeding is a "contested case". All participants, as well as the agency, should know to a certainty at the very outset the nature of the hearing procedures to be employed. It would be a relatively simple matter to legislate this artfully and sensibly in each organic act and end this cumbersome flow of appeals on the hearing procedures to be employed in specific agency proceedings. While this flow in the past few years has been centered for the most part around zoning cases it seems to me it would be just as well to settle the matter legislatively in all organic acts.

**312**

REILLY, Chief Judge, with whom Associate Judges NEBEKER and HARRIS concur (dissenting):

This is the third in a series of cases in which a majority of this court by a seemingly tortured construction of the District of Columbia Administrative Procedure Act of 1968 (D.C.Code 1973, §§ 1–1501 to 1–1510) has dashed whatever hopes the authors of that statute may have entertained of its bringing some measure of fairness and due process to the actions of local administrative agencies.[1] Until the passage of that act, there was no specific statutory provision for judicial review of actions of the Zoning Commission. In order to make it crystal clear that such act was intended to give persons adversely affected or aggrieved by orders or decisions of the Zoning Commission direct judicial review in this court, Congress included express language to that effect in the Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91–358.[2]

Prior to these enactments, persons aggrieved by Zoning Commission action had some recourse in suits filed in the United States District Court, it being recognized that original jurisdiction was conferred upon such court by D.C.Code 1967, § 11–521 [since repealed], even though that section did not mention the Commission, referring only to "civil actions between parties, where either or both of them are resident or found within the District." *Allen v. Zoning Commission,* 146 U.S.App.D.C. 24, 25, 449 F.2d 1100, 1101 (1971). In a case begun before repeal of this section the United States Court of Appeals for this circuit noting that the hearing challenged in that suit had occurred before the effective date of the D. C. Administrative Procedure Act, remarked that the new statute

apparently covered the Zoning Commission and that a hearing before such Commission appeared to come within the act's definition of a "contested case", § 1–1502(8). *Allen v. Zoning Commission, supra* at 27 n. 3, 449 F.2d at 1103 n. 3.

Consequently, petitioners here must be somewhat startled to learn that despite this judicial pronouncement and the transfer of jurisdiction over zoning matters from the District Court to this court, they are not parties to a "contested case" and not even entitled to have their grievances reviewed in the very forum designated by Congress in the Judicial Reorganization Act.

To put the instant case in perspective, it should be observed that the harm which petitioners (neighborhood associations representing occupants and owners of residential property in the Dupont Circle area) say they have suffered from the challenged action of the Zoning Commission—a harm for which this court now closes any avenue of redress under the Administrative Procedure Act—is not purely procedural.

A few years ago, without statutory authority, the corrections department of the local government took over a number of residential dwellings in the vicinity of Dupont Circle and utilized them as "halfway houses." As the neighborhood was zoned as R–4,[3] this was an obvious breach of the zoning regulations—there being no specific authority in the regulations then in effect permitting penal or correctional institutions in residential districts.

After this became a matter of litigation, the staff of the Zoning Commission recommended an amendment to the regulations allowing halfway houses in R–4, R–5, and less restrictive zones, conditioned upon a hearing before the Board of Zoning Ad-

---

1. The previous ones were *Hotel Ass'n v. District of Columbia Min. W. & I. S. Bd.,* D.C.App., 318 A.2d 294 (1974), and *Chevy Chase Cit. Ass'n v. District of Columbia Council,* D.C.App., 327 A.2d 310 (1974), the latter quoted with approval in the body of the opinion in the instant case.

2. This particular provision is now incorporated in D.C.Code 1973, § 11–722.

3. This classification permits row dwellings for single family use or rooming houses.

justment before any specific halfway house could be established. This proposal at least had the merit of allowing a hearing to discover just how any such proposed institution would be operated and its particular impact upon the immediate neighborhood. In short, it contemplated a series of the kind of evidentiary hearing and Board findings of fact required by § 1–1509 as a necessary preliminary to any given structure being utilized as a halfway house.

The challenged amendment eventually adopted by the Commission, however, eliminated this safeguard. Thus under its terms the government (Federal and District) is free to establish a halfway house, whenever and whereever it pleases in an R–4 zone, without notice to the neighboring residents and quite irrespective of any considerations of public safety and effect on property values. This amendment was adopted in the face of protests at a public hearing, supported by accounts of how even a limited number of halfway houses had blighted the neighborhoods in which they were situated. Evidence was offered to show that the supervision at such institutions was so lax that numerous prisoners assigned to live in them frequently took to the streets to murder, rape, stab, or rob again. In denying the residents the right to develop such facts by sworn testimony and cross-examination, the Commission took the view that the matter was not a "contested case" within the meaning of the Code. The majority sustaining this position cites the definition of this term in § 1–1502(8)—"a proceeding before . . . any agency in which the legal rights . . . of specific parties are required by any law . . . to be determined after a hearing . . . ."

As the Zoning Act itself requires a hearing before an amendment can be made effective, D.C.Code 1973, § 5–415, it is difficult to understand why this definition did not fit the instant case—the residents and

property owners of affected R–4 zones being specific parties whose asserted legal right to preserve the purely residential character of such zones from incompatible uses was at issue in the proposed determination.

The majority opinion ignores this aspect of the matter by repeating the questionable thesis enunciated previously by the majority in the *Hotel Association* and *Chevy Chase* cases,[4] *viz.*, that the action of the Zoning Commission was "legislative" rather than "adjudicative"—words not used in the DCAPA itself. Hence, not being "adjudicative"—we are told—the procedural safeguards prescribed by the Act for "contested cases" were not required to be followed at the hearing.

It is scarcely necessary to resort to decisions of other courts, or to hornbooks on administrative law, to show that the Commission's action was not an adjudicatory proceeding. What it obviously was doing was "rulemaking"—a well known function of administrative agencies referred to in § 1–1502(7) of the Code as "agency process for the formulation, amendment, or repeal of a rule", the term "rule" itself being defined in subsection (6) of this section, as:

> [t]he whole or any part of any Commissioner's Councils, or agency statement of *general or particular applicability* and future effect designed to *implement,* interpret, or *prescribe law or policy* or to describe the organization, procedure, or practice requirements of the Commissioner, Council or of any agency . . . . (Emphasis supplied.)

The adoption of a "rule" is exactly the same kind of agency decision which the majority opinion calls "legislation", *viz.*, a regulation within the guidelines of a statute embodying the agency's concept of policy, irrespective of whether such regulation is of general (as here) or particular applicability.[5]

---

4. *See* n. 1 *supra.*

5. The majority opinion treats this case as though it presents solely a policy question of

But regardless of what an agency's non-adjudicative actions are called, how the premise ever developed that such actions should be treated differently under the Administrative Procedure Act from the adjudicatory process remains shrouded in mystery. Section 1509 which sets forth the procedures in "contested cases" plainly covers both rulemaking as well as adjudication for subsection (b) thereof expressly refers to the proponent of "a rule or order"—"order" apparently referring there to final action in an adjudicatory case. The term "order" is defined in § 1–1502(11) as "[a] final disposition . . . of any agency in any matter other than rulemaking, but including licensing." By judicial fiat, the majority has read the word "rule" out of the Act, despite its inclusion in the two key sections of the Act, §§ 1–1502 and 1–1509, drawn into issue by the petition for review.

So viewed, the majority's disposition of the "contested case" issue is contrary not only to the spirit but the letter of the Administrative Procedure Act. Nevertheless it must be conceded that the holding on this point was foreshadowed by the majority opinions in *Hotel Association* and *Chevy Chase, supra.*

This cannot now be said, however, of the second part of the opinion, which completely bars petitioners' right to judicial review of what they justifiably assign as substantial errors in statutory construction of the Zoning Act.[6] They urge that this court should pass upon these questions wholly independently of any consideration of a "contested case." But by deciding that judicial review is available only in "contested cases", the majority has not only gone further than any holding of this

court in shutting the door to judicial redress, but its conclusion flies in the face of a contrary recent holding in which those same judges concurred, *viz., Hotel Association v. Minimum Wage and Industrial Safety Board, supra.* There, the majority opinion rejected the contention that because the judicial review provision, D.C. Code 1973, § 36–409(a), applicable to Minimum Wage Board action, mentioned the D. C. Administrative Procedure Act, such provision necessarily implied that the wage proceedings amounted to a contested case. It held, however, that even though the matter was not a "contested case", judicial review was not precluded, for what " . . . Congress intended in this regard was that our review should be controlled by D.C. APA standards." *Id.* at 305. The court then went on to consider such issues raised on review as the scope of the hotel exemption from the statute the composition of the ad hoc committee, a possible conflict of interest on the part of a member of the Board, and the asserted failure of the Board to take into account the statutory guidelines. Such contentions were reviewed under the standards of § 1–1510(3)(E) of the DCAPA; the opinion explaining that the 1970 amendment (part of the Court Reform Act), § 36–409(a), for review of Wage Board orders stated that such review "shall be governed" by the local APA. *Id.* at 311 n. 24.

Earlier in that same opinion, *id.* at 304, the majority said:

But what petitioners have apparently overlooked is that the jurisdiction of this court to review orders of the Board was not conferred by the D.C. APA but rather by the Act, as amended (most recent-

broad, future applicability. This understandably will sorely disappoint petitioners, who have stressed that there are dozens of halfway houses already existing in their neighborhood. The Zoning Commission's action, while cloaked in terms of general applicability, actually legitimated those existing halfway houses, giving the residents of the area no real opportunity to testify as to their effect on the neighborhood.

6. Petitioners contend, *inter alia*, that the express provisions of the act which created the Zoning Commission prevented that agency from issuing regulations having nothing to do with the purposes of that act—enumerated in D.C.Code 1973, § 5–414—but rather for the unrelated objective of authorizing experiments in the field of penal rehabilitation.

ly in 1970), D.C.Code 1973, § 36–409(a), well after the effective date of the D.C. APA. By this amendment it was provided that:

> Any person aggrieved by an order [of the Board] . . . may obtain a review . . . in the District of Columbia Court of Appeals by filing . . . a written petition . . . . The review shall be governed by the District of Columbia Administrative Procedure Act.

Thus, the organic act, § 36–409(a), requires review by this court on petition of any person aggrieved by an order of the Board. Significantly enough, the Congress did not condition such review upon the existence of a contested case or require the application of all provisions of the D.C. APA.

In the case now before us, both the petitioners and the majority have also apparently overlooked the fact that the jurisdiction of this court to review Zoning Commission action, if not conferred by § 1–1510 of the DCAPA itself, was expressly conferred by § 11–722, also part of the 1970 Act to which reference has been made. The only difference in wording between these two sections is that § 11–722 (relating to the Zoning Commission and the Board of Zoning Adjustment) prescribes that judicial review shall be "in accordance with" the DCAPA and in § 36–409(a) (Minimum Wage Board) that such review "will be governed" by that Act. Plainly, these phrases mean the same thing as the majority opinion seems to concede sub silentio.

Apparently it is not the intent of the majority to overrule the *Hotel Association* holding that this court has jurisdiction to review decisions of the Minimum Wage Board even in cases it deems "noncontested" under the DCAPA. Its explanation of why such jurisdiction is not equally present in zoning cases, however, seems to defy all logic. Granted that there was a provision

(D.C.Code 1967, § 36–409) for judicial review in the Minimum Wage Act itself before the passage of the DCAPA in 1968, judicial redress of statutory errors in zoning proceedings was also available prior to that date, as I have pointed out in discussing the *Allen* case, but in the United States District Court rather than this court under another provision of the D.C.Code—§ 11–521.

Presumably both these sections of the Code were superseded when § 1–1510 of the DCAPA became effective. Perhaps because of some question on that score, however, Congress, in enacting the comprehensive Court Reform and Criminal Procedure Act of 1970 decided to make it plain that not only was § 1–1510 of the DCAPA to replace § 36–409 on review of minimum wage orders, but was also to supersede the United States District Court's review of zoning cases by vesting such review in this court.

This was done with respect to the wage agency by the amendment codified as § 36–409, and with respect to the two zoning agencies by the amendment codified as § 11–722—which can scarcely be described as "general review provisions" as it singles out the Zoning Commission and the Board of Zoning Adjustment for review in accordance with the DCAPA and the Public Service Commission for another kind of review. In other words, Congress in the 1970 Act made no distinction at all between the Minimum Wage Board and the Zoning Commission insofar as direct review by this court was concerned, but because such action by the codifiers of the 1973 Code placed some of the clarifying amendments contained in the 1970 Act under different titles, the majority have evidently decided that the plain words of Congress may be ignored.

In view of the explicit wording of § 11–722 placing judicial review of Zoning Commission orders in this court, how can the conclusion be reached that Congress "did . . . condition such review upon the

existence of a contested case", when the majority held just the opposite with respect to the legal effect of § 36–409 on review of Wage Board orders?[7]

With all deference to Judge Gallagher's thoughtful and scholarly opinion, it seems to me that his observations tend to disclose, rather than disprove, the impossibility of reconciling the majority result with the plain words of the statute. His thesis, *viz.,* that the "trial type" hearing procedures prescribed by § 1–1509 of the DCAPA have no application to rulemaking, as distinguished from adjudication, is based not upon any words of limitation in the local APA but upon an express exemption in § 3 of the federal APA, 5 U.S.C. 553.

His opinion assumes—without citation of authority other than decisions of United States courts construing the federal Administrative Procedure Act—that this court should look first to the organic act creating the particular agency to determine "the type of agency hearing envisaged" before deciding to apply the procedural safeguards prescribed by the DCAPA for "hearings required by law."

This is precisely the reverse of the original approach of this court to the DCAPA when, shortly after its enactment, we twice vacated orders of the local Unemployment Compensation Board, pointing out to the agency that the detailed hearing and appellate procedures of that agency's "organic act" (D.C.Code 1973, § 46–311) had been

superseded by the all-inclusive later statute.[8] It is also the reverse of what the *Allen* decision, *supra,* cited in the concurring opinion, really held. In that case, the circuit court did indeed correctly analyze the informal character of the hearing provided by the local zoning act. But that court was dealing with a proceeding which had occurred prior to the enactment of the DCAPA, and hence felt compelled to point out the distinction between such a hearing and the kind of hearing which the Zoning Commission would have to provide after the effective date of the DCAPA. Apparently it never occurred to the circuit court that because the Zoning Act contemplated a different type of hearing, the DCAPA could not change zoning proceedings, as § 1–1501 of the latter act provided that it would "supersede any [prior] law and procedure to the extent of any conflict therewith."

It is true that there are many decisions like *United States v. Allegheny Ludlum Steel Corp.,* 406 U.S. 742, 92 S.Ct. 1941, 32 L.Ed.2d 453 (1972), construing the federal APA, holding that unless "rules are required by statute to be made on the record after opportunity for an agency hearing", informal rulemaking procedures are permissible. But those decisions rest upon the quoted exemption from formal rulemaking contained in § 3 of the Act, 5 U.S.C. 533. There is no such broad exemption in the corresponding local act and consequently no basis whatsoever for the notion that the kind of informal rulemaking which devel-

7. The short answer to the contention (expressed in the concurring opinion) that persons aggrieved by illegal Zoning Commission action may obtain judicial review by a suit in the Superior Court is that no such remedy is provided by statute. Instead, Congress placed whatever judicial recourse is available at all in this court. The cases cited for the proposition are not in point. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), antedated both the DCAPA and the 1970 Act, and *District of Columbia v. Green,* D.C.App., 310 A.2d 848 (1972), a case tried in the Tax Division of

the Superior Court, fell with the statutory exemption of § 1–1502(8)(A) as it involved a "matter subject to a subsequent trial of the law and the facts de novo . . . ."

8. *Wallace v. District Unemployment Compensation Bd.,* D.C.App., 289 A.2d 885 (1972); *Woodridge Nursery School v. Jessup,* D.C. App., 269 A.2d 199 (1970). Our finding that these proceedings were "contested cases" rested entirely upon our examination of the DCAPA which caused us to deem as repealed, language in the organic act pointing to a different inference.

oped under the District of Columbia Zoning Act is still permissible.[9]

To suggest, as the concurrence does, that language omitted by Congress in a later enactment from the "parent legislation in administrative law (the federal APA)" provides appropriate guidance for this court is a novel and startling concept of statutory interpretation. Under well established canons of construction, when a legislative body enacts an amendment in the nature of a substitute to a particular statute but omits an exemption contained in the original statute, such omission is presumed to be deliberate. This same rule of interpretation has been applied in this jurisdiction to District of Columbia statutes modeled in part on national statutes dealing with the same subject matter, *e. g., District of Columbia v. Schwerman Trucking Co.,* D.C.App., 327 A.2d 818, 824 (1974); *Williams v. W. M. A. Transit Company,* 153 U.S.App.D.C. 183, 472 F.2d 1258 (1972).

Accordingly there is no ground for the reproach that the dissenting opinion "legislates the result it reaches" simply because such result obliterates the distinction which Congress made in the federal APA—and which textbook writers have noted—between adjudication and "legislative" (*i. e.,* rulemaking) agency proceedings. As I have pointed out, Congress itself obliterated this distinction when it enacted the DCAPA. It is not the proper function of this court, or any judicial body, to undo what Congress did when it chooses not to incorporate into the local statute an exemption it had placed in the federal one.

9. Informal rulemaking patterned after the procedures in 5 U.S.C. 553 is indeed authorized under § 1–1005 of the local APA, but only with respect to the making of regulations under a law not requiring a hearing, *e. g.,* D.C.Code 1973, § 1–224, authorizing regulations with regard to storing inflammable substances, keeping of dogs and fowl, littering streets with garbage, using fireworks and explosives, etc. There are many similar local statutes which should not be confused with other enactments mandating a hearing as a condition precedent to agency action. Thus the contention that the dissent calls for the abandonment of all informal rulemaking by local agencies is lacking in substance.